GROSS, Administrator, v. WATTS et al., Appellants.

**Division One, July 13, 1907.**

1. **PRACTICE: Admitting Evidence After Case Closed: Formal Matters.** After the close of the evidence it was agreed and noted of record that the cause was submitted to the court and would be argued at the next term. At the next term the court permitted plaintiff to introduce in evidence a certified copy of his appointment as administrator. *Held*, that the order continuing the case to the next term preserved the jurisdiction of the court over the entire case, and the evidence offered being only of a formal matter and in no wise injuring defendants, there was no abuse of the court's discretion in permitting the introduction of the evidence out of its order.

2. **ADMINISTRATOR: Appointment.** Where the answer is a general denial, it is not necesary for plaintiff to prove his appointment as administrator. It can be questioned only by a special plea in abatement.

3. **ACKNOWLEDGMENT: Residence.** That portion of the statute which directs the "place of residence" of the grantor in a deed to be stated in the certificate of acknowledgment is directory and not mandatory, and the acknowledgment is not insufficient because the grantor's residence is not stated.

4. **———: Free Act and Deed.** A certificate of acknowledgment is not defective because it does not recite that the deed was executed as the grantor's "free act and deed." The statute requires it to state the "act of acknowledgment," and where the certificate recites that the grantor "duly acknowledged the execution of the same" it substantially complies with the statute.

5. **MORTGAGE: Notice: Alteration of Deed.** The record title was in Johnson and he conveyed to Watts by deed which was never recorded. Barber erased the name of Watts and wrote in his own and withheld it from record, and while the title was in this condition the mortgage from Watts to McQuacker, which plaintiff seeks to have foreclosed, was executed and placed of record, and Barber conveyed to defendants. *Held*, that the rec-

ord of the mortgage imparted no notice to defendants, but as they all had actual notice of the existence of the mortgage, it was properly admitted in evidence. There is no need of constructive notice where there is actual notice.

6. **FORGED DEED:** Knowledge. Where the agent of the mortgagee changed and mutilated the deed from the owner of the land to the mortgagor, by erasing the grantee's name and inserting his own, and then sold the land to defendants, who knew of the alteration, they are bound by his rascality, whether the deed was recorded or not, or whether or not it was outside of the chain of title.

7. ————: Notice. No one acquires any interest in land through a forged deed, whether he has notice of the forgery or not.

8. **LIMITATIONS: Kansas: Cause Not Extinguished: Law of Forum.** The law of Kansas declaring a civil "action upon any agreement, contract or provision in writing" is to be brought within five years, only bars the remedy, and does not go further and extinguish the cause of action, and that being the case a suit to foreclose a mortgage on Missouri land, given to secure the payment of a note and mortgage executed and made payable in Kansas, is not barred in five years, for it is only in cases where the cause of action is extinguished that the laws of the forum apply.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

AFFIRMED.

*H. F. Millan* for appellants.

(1) Where a deed is delivered with the name of the grantee blank and parol authority to the person to whom it is delivered to insert the name of any grantee he may see fit, and he inserts a name therein, the title passes. Thummel v. Holden, 149 Mo. 677. Changing the amount of consideration in a deed is not a material alteration. Jones on Real Property, sec. 1344. The taking of a mortgage for a preexisting deed does not constitute the mortgagee a purchaser for value in good faith. Jones on Real Property, sec. 1390. (2).

The record of the mortgage is not notice. First, because it was not properly acknowledged and therefore not entitled to record; and, second, because not within the chain of title. (3) The court erred in admitting the mortgage sued on in evidence without proof of its execution. The mortgage was not legally acknowledged. Simms v. McLared, 94 S. W. 792. (4) When a note is barred by the law of another State, it is barred by the law of this State. R. S. 1899, sec. 4280. When the debt is barred the mortgage securing the same is barred. R. S. 1899, secs. 4276, and 4277; St. L. Type Co. v. Jackson, 128 Mo. 189. (5) The finding of the court that the deed from Johnson was originally made to Watts and Watts' name erased therefrom and Barber's inserted, is not supported by the evidence. There is absolutely no evidence to support this finding. Adams v. Yates, 143 Mo. 475. (6) The defendants Best and Bradigums and Simmons are innocent purchasers. Garland v. Wells, 18 N. W. 132; Field v. Stag, 52 Mo. 534; McClain v. McClain, 3 N. W. 60.

*Dysart & Mitchell* for respondent.

(1) Evidence may be introduced after a case is closed, and the case will not be reversed unless it appears that the trial court abused its discretion and injury resulted to the complaining party. Fullerton v. Fordyce, 144 Mo. 526; Joplin Water Works v. Joplin, 177 Mo. 531. The proof of the appointment of the administrator was a formal matter and did not and could not in any way have injured the defendants. Indeed, there was no need of proof of the appointment of the administrator. The general denial is addressed to the merits of the case and proof need not be made of the appointment of the administrator unless the denial thereof is a special denial. There was no special denial in the answers. Baxter v. Trust Co., 95 S. W. 856; Levels v. Railroad, 196 Mo. 614; Rodgers v. Marsh, 73 Mo. 64; 1 Chitty on Pleadings, 446; Kinkaid

v. Storz, 52 Mo. App. 564; Taylor v. Pullen, 152 Mo. 434. (2) The record of the mortgage in question was notice. It was properly indexed. The index is no part of the record anyway. Bishop v. Schneider, 46 Mo. 472. The mortgage was properly acknowledged. It fills every requirement of section 913, Revised Statutes 1899, sec. 2408, Revised Statutes 1889. "A substantial compliance with the law is all that is required." Alexander v. Merry, 9 Mo. 527; Warder v. Henry, 117 Mo. 539. If the section is complied with, the acknowledgment is good even if it does not follow the printed form. The form is only cumulative. Huse v. Ames, 104 Mo. 91. The form used in this deed comes nearer complying with the requirements of the section as to acknowledgments, than the printed form in our stat-ute. The acknowledgment is word for word like the acknowledgment to the warranty deed in question and defendants rely on this. This mortgage was recorded immediately after its execution and if it had had no acknowledgment at all, would have been notice at the time of the transactions herein complained of. Sec. 3118, R. S. 1899; sec. 4864, R. S. 1889; sec. 2305, R. S. 1879; Laws 1887, p. 183. The execution of the mortgage was procured at request by the defendant, E. A. Barber, for the purpose of securing this very debt in question. (3) The acknowledgment of the mortgage in due form has but little force in this case, anyway. It was of record and requested to be made by one of the defendants, E. A. Barber, for the purpose of securing this debt. And where actual notice exists all necessity for constructive notice vanishes away. Harrington v. Fortner, 58 Mo. 473; Wilson v. Kimmel, 109 Mo. 264. Notice of the deed or claim is as good as legal registry. Jackson v. Burgott, 10 Johns. 457; sec. 925, R. S. 1899; sec. 2420, R. S. 1889; Abbe v. Justus, 60 Mo. App. 300; Meier v. Blume, 80 Mo. 179; Major v. Buckley, 51 Mo. 227; Taaffe v. Kel-

ley, 110 Mo. 137.    (4)  The charge in this case is that
the defendant's claim is based on a forged instrument.
The principle of law that unrecorded deeds and deeds
outside of the chain of title furnished no constructive
notice, does not apply to forged instruments.    Pry v.
Pry, 109 Ill. 476; 2 Jones, Law of Real Prop. and Con-
vey., sec. 1353.    (5) ˙These defendants all had notice
of the scratched, mutilated and altered deed, under
which E. A. Barber claimed title.   The marginal nota-
tion of the record called attention to it and the deed by
requirement of statute remained in the office of the re-
corder of deeds for a year.   Hedrick v. Railroad, 120
Mo. 539; Sensenderfer v. Kemp, 83 Mo. 581; Speck v.
Riggin, 40 Mo. 405.   The defendants, Best, Bradigums
and Simmons were no innocent purchasers.   They all
had direct notice of this claim.   This, in addition to
the fact that the scratched deed and the circumstances
surrounding this transaction, all placed them on in-
quiry.   Hedrick v. Railroad, 120 Mo. 540: Halsa v. Hal-
sa, 8 Mo. 303.

WOODSON, J.—This case originated in the cir-
cuit court of Macon county, and was instituted by plain-
tiff, administrator, against the defendants, having for
its purpose — the first count — the foreclosure of a
mortgage, executed and recorded, from William J.
Watts and wife to Janet McQuacker, deceased, convey-
ing the land described in the petition, and located in
the county of Macon, State of Missouri, to secure their
promissory note for the sum of $500, due in five years
from date, and five coupons attached thereto for thirty-
five dollars each, which represent the annual interest
on said note.   The note and coupons after maturity
bear interest at the rate of ten per cent per annum,
and are payable at the First National Bank of Hum-
boldt, Kansas.   The plaintiff was duly appointed ad-
ministrator of the estate of Janet McQuacker by the

probate court of Macon county, and he duly qualified and he is now, and was at the time of the institution of this suit, acting as such. The other defendants are made parties to the suit because they claim some interests in the land, by mesne conveyances, through the defendant Watts, which will be more fully stated in the statement regarding the second count of the petition. The note and all the coupons were past due, and unpaid, at the time of the institution of this suit, except two or three of the coupons which had been paid prior to that date.

The prayer of the first count was for judgment for the amount of the note and the unpaid coupons, against the makers, a foreclosure of the mortgage and sale of the real estate to satisfy the judgment, and for execution against the makers for the excess, if any, over and above the proceeds of the sale of the land under the foreclosure proceedings.

The second count of the petition had for its object the reformation of a warranty deed, from W. W. Johnson and wife to defendant Wm. J. Watts purporting to convey the land in question, dated August 14, 1889. The facts regarding the transactions involved in the second count are best stated in the language of the petition itself, and they are as follows:

"That said mortgage [the one mentioned in the first count] was procured and negotiated by said defendant, E. A. Barber, to secure said loan to said Janet McQuacker; that the title of the said William J. Watts to the premises and lands described in said mortgage was a warranty deed duly executed and delivered to said William J. Watts, for a good and valuable consideration, by W. W. Johnson and his wife, Nellie C. Johnson, dated August 14, 1889, and duly acknowledged on said 14th day of August, 1889, before a notary public, in Allen county, and State of Kansas; that said warranty deed to said William J. Watts was by

said William J. Watts placed and left; with money sufficient for the record thereof, in the hands of said E. A. Barber, to be sent to the recorder of deeds for Macon county, Missouri, for record; that said E. A. Barber promised and agreed to send said warranty deed conveying said lands from said Johnson and wife to said William J. Watts, executed as aforesaid, to the recorder of deeds of Macon county, Missouri, for record in said office or recorder of deeds, together with the money deposited with him to pay for said recording; that by the fraud and deceit of said defendant, E. A. Barber, said warranty deed and conveyance was never sent by him to the recorder of deeds of said county of Macon and was by fraud and deceit of the said defendant, E. A. Barber, never placed of record upon the records in the office of recorder of deeds of said county of Macon; that the said defendant E. A. Barber, intending to cheat and defraud the said Janet McQuacker, without right, without authority and corruptly and fraudulently altered, erased and changed the grantee's name in the said warranty deed, conveying said premises from said W. W. Johnson and wife, Nellie C. Johnson, to said William J. Watts, by fraudulently erasing the name of the grantee, to-wit, William J. Watts, and writing in place thereof as grantee in said deed his own name, to-wit, E. A. Barber, which thereby became and was a forged instrument through which no subsequent party as grantee could acquire title; that the said E. A. Barber, further intending to cheat and defraud the said Janet McQuacker and the heirs of the estate of said Janet McQuacker, did, on the 8th day of April, 1901, fraudulently and wrongfully procure and have said warranty deed altered and changed as aforesaid, filed and entered of record in the office of the recorder of deeds of Macon county, Missouri, and the same is recorded in book 126, page 582, in the said office of recorder of deeds for said county of Macon, changed

and altered as aforesaid; that said defendant, E. A. Barber, further intending to cheat and defraud the said Janet McQuacker, and the heirs of the estate of Janet McQuacker, did, on the 9th day of April, 1901, pretend to sell and convey the said land and premises to defendants, J. W. Bradigum, George F. Bradigum and Albert Best for $1800 by warranty deed, which was duly acknowledged on the 9th day of April, 1901, before a notary public of Greene county, Missouri, and the same was duly filed for record and recorded on the 20th day of April, 1901, in the office of recorder of deeds for said county of Macon, in book 133 at page 118, the said defendant, E. A. Barber, warranting the said premises to be free and clear of all encumbrances, and that he had good title thereto, well knowing then and there that he had no title to said premises and that plaintiff's said mortgage was a valid and subsisting lien on said premises; that the said defendants, J. W. Bradigum, George F. Bradigum and Albert Best, well knowing and by ordinary diligence being able to well know the altered and changed condition of the deed filed and recorded as aforesaid in book 126 at page 582, in the office of recorder of deeds for Macon county, Missouri, as also that plaintiff's said mortgage was a valid and subsisting lien on said premises, did pretend to purchase said premises from said defendant, E. A. Barber, and that said E. A. Barber never had any title to said premises, that afterward said defendants, J. W. Bradigum, George F. Bradigum and Albert Best, well knowing the facts as aforesaid, as to the title to said premises, did, on the 16th day of April, 1901, by their certain deed of trust, pretend to grant, bargain, sell, convey and confirm unto the defendant William R. Baird, as trustee for the defendant, Norah Wyatt, the said land and premises to secure to said Norah Wyatt the payment of a note of $1,000 in said deed described, which deed of trust was recorded on

the 20th day of April, 1901, in the office of recorder of deeds of said county of Macon, Missouri, in book 129 at page 211, the said defendants, William T. Baird and Norah Wyatt, knowing well or by reasonable diligence being able to know well at the time of receiving said deed of trust all the facts above set out as to the state of title to said premises, and that said E. A. Barber never had any title to said premises, and that the said warranty deed of W. W. Johnson and wife as the same appears of record, in book 126 at page 582, changed, as aforesaid, as to the grantee therein, is a cloud upon plaintiff's title and endangers the collection of plaintiff's debt in proceeding to sell said land for the payment of said debt.

"Wherefore, plaintiff prays the court to reform and correct the record of the said warranty deed made by said W. W. Johnson and Nellie C. Johnson, his wife, recorded in said book 126 at page 582 in the office of recorder of deeds of said Macon county, and restore the name of William J. Watts as grantee in said deed as the same was when it was executed before the said E. A. Barber changed and mutilated the same, and for a decree and finding that the claim and right of all the defendants are subject to the right and lien of the plaintiff, and for costs therein expended, and for all other general and proper relief."

Defendants Best, Bradigums and Simmons filed their separate answer, and it is as follows:

"The defendants, Albert Best, J. W. Bradigum, Geo. F. Bradigum and Charles Simmons for separate amended answer herein to the first and second counts of plaintiff's petition deny each and every allegation therein except such as are hereinafter specifically admitted.

"They admit that they claim an interest in the lands described in plaintiff's petition and that the interest claimed by them is the full title in fee simple

absolute to all of said lands; and they deny that either before or at the time of their purchase thereof they had any knowledge or information whatever that either Janet McQuacker or Wm. J. Watts had or claimed any interest in the lands described in plaintiff's petition.

"That they purchased said lands from E. A. Barber and upon an abstract showing a perfect title in him and relying thereon; and upon the fact that the said E. A. Barber had been in the actual, open, notorious and continuous adverse possession of said land claiming title thereto against the world for more than ten years, that on the 9th day of April, 1901, the said Barber conveyed said lands by warranty deed to defendants, Albert Best, J. W. Bradigum and George F. Bradigum, and on the 7th day of September, 1901, the said J. W. Bradigum and John F. Bradigum conveyed their interests therein to defendant Best; and on the 10th day of September, 1901, defendant Best conveyed to defendant Simmons the following part of said lands, to-wit: All that part of the west half of the northwest quarter of section nine, township sixty, range sixteen, lying west of the Chariton river in Macon county, Missouri. That all of said conveyances were made upon full value paid by the grantee to the grantor and without any knowledge or information of any fraud practiced or attempted to be practiced by E. A. Barber, if any, or others, and without any knowledge or information of any claim or right of Janet McQuacker or William J. Watts, either legal or equitable.

"Defendant further states that by paragraph 4095 in article 3, chapter 80, volume 2, of the General Statutes of Kansas, 1889, it is provided as follows:

" '(4095). Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

" 'First. Within five years: An action upon any agreement, contract or promise in writing.'

"That upon the face of the note filed with the plaintiff's petition as the cause of action and as a part of said note it is provided as follows: 'The interest upon this note until its maturity is shown by coupons bearing even date herewith, and if default be made in the payment of any interest coupon at maturity then the principal note shall immediately become due and payable and be collected by suit at law at any time after such default.' That by virtue of the terms of said note and coupons they became due December 1st, 1896, and so defendants say that plaintiff's cause of action, if any, did not accrue within five years next before the bringing of this suit.

"Defendant further answering the second count of plaintiff's petition says that plaintiff's cause of action, if any, did not accrue within ten years next before the commencement of this suit."

Defendant, Barber, answered as follows:

"The defendant, E. A. Barber, for his separate answer herein denies each and every allegation in plaintiff's amended petition in both counts thereof.

"Defendant further answering admits the sale and conveyance by him of the lands in dispute to defendants Albert Best, J. W. Bradigum and Geo. F. Bradigum; defendant specially denies that either Wm. J. Watts or Kate Watts ever had any title, right or interest legal or equitable in the lands in dispute.

"He denies that the deed dated 14th day of August, 1889, and recorded in book 126 at page 582 in the recorder's office of Macon county, Missouri, was made to Wm. J. Watts or Kate Watts; denies that their names or either of them were ever written in said deed as grantees therein.

"He denies that he ever erased the name of Wm. J. Watts or Kate Watts or either or both of them from

said deed; but asserts the fact to be that no other name than his own was ever written in said deed as grantee therein.

"He emphatically denies all charges of fraud and further says that he and his grantees have been in the open, notorious and continuous adverse possession of the land in dispute for more than ten years before the commencement of this suit, claiming title thereto adverse to all the world.

"He further states that by paragraph No. 4095 in article 3, in chapter 80, volume 2 of the General Statutes of the State of Kansas, 1889, it is provided as follows:

"'(4095). Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"'First. Within five years: An action upon any agreement, contract or promise in writing.'

"That upon the face of the note presented and filed with plaintiff's petition, and as a part thereof it is provided as follows: 'The interest upon this note until its maturity is shown by coupons bearing even date herewith and if default be made in the payment of any interest coupon at maturity, then this principal note shall become immediately due and payable and be collected by suit at law at any time after such default.' That by the provisions of said note and said coupons they became due and a cause of action accrued thereon December 1st, 1896, and plaintiff's action was not begun within five years thereafter; and so defendant says the said pretended cause of action and the pretended mortgage described in plaintiff's petition are barred by said statute of limitation.

"Defendant further answering the second count of plaintiff's petition says that the pretended cause of action stated in the second count of plaintiff's petition

did not accrue within ten years next before the commencement of this suit."

The reply of plaintiff is as follows:

"Now at this day comes the plaintiff and for reply to the answers of the defendants filed in this case, denies each and every allegation of the new matter therein contained.

"And further answering plaintiff says that at the time the cause of action accrued against the defendants and each and every one of them, each and every one of the defendants was out of the said State of Kansas, and that the defendant, William J. Watts, was out of the State of Kansas and has not been in the State of Kansas since the said cause of action accrued until the filing of this cause of action in this court, and that ever since the cause of action accrued the said William J. Watts has absconded and absented himself from his usual place of residence and has concealed himself so that process of law in the State of Kansas and also in the State of Missouri could not be served upon him personally, and his whereabouts has been concealed and kept from his own relatives and family, since the —— day of November, 1896, or thereabouts, and also during said time his whereabouts has been unknown to the holders and owners of the note and mortgage herein sued upon. And having fully replied, the plaintiff prays for judgment as asked in the petition."

At the trial plaintiff introduced evidence tending to prove the following facts: That the mortgage sued on was duly executed and recorded. To the introduction of the mortgage in evidence the defendants objected, because not properly acknowledged, and was therefore improperly recorded, and imparted no notice to defendants. The certificate of acknowledgment is in the following words:

"State of Missouri, County of Barton, ss.

"Be it remembered that on this 17th day of December, A. D. 1894, before me, a notary public, in and for said county, came Wm. J. Watts and Kate Watts (husband and wife) to me personally known to be the same persons who executed the foregoing instrument and duly acknowledged the execution of the same." Then follows the ordinary attesting clause of the notary.

The court overruled the objection, and the defendants duly excepted.

That the deed from W. W. Johnson and wife was executed in 1889, but was withheld from record for about eleven years; that the note, coupons and mortgage from Wm. J. Watts and wife were made in 1892—the note was made to Janet McQuacker, and by mistake the mortgage was executed to Mary McQuacker, and a corrected mortgage was made to Janet McQuacker, securing the note, and was dated December 27th, 1894. The grantee in the first mortgage, Mary McQuacker, gave a quit-claim deed to Wm. J. Watts and wife, about the time the second mortgage was executed to Janet McQuacker. This loan was made at the request of defendant E. A. Barber; he negotiated the loan, and, when the mortgage was recorded, it was mailed to him at Humboldt, Kansas.

In reply to a letter written by counsel for plaintiff to E. A. Barber he answered as follows:'

"Springfield, Mo., Feb. 15, 1898.
"Dysart & Mitchell, ·
        "Macon, Mo.
"Gentlemen:
        "Your favor of recent date inquiring about Wm. J. Watts and Kate Watts, his wife, received and noted.

"When the note and mortgage was given these parties lived at Golden City, Barton county, Mo. In the fall of 1896, just before the election, Wm. J. Watts mysteriously disappeared and has not been heard from since.

"I suppose that all that you can get or do will be to bring suit and get a decree foreclosing the mortgage and ordering the sale of the land and then sell it and bid it in for your clients. I believe I am in a position to help you out and give you as good or better a title to the land than you can get by suit, and so I make you this proposition, viz.: I will get you a good title to the land subject to the back taxes, provided I may have the timber on the land and a reasonable time, say one, two or three years to remove it from the land. I presume the land with the timber taken off ready for the plow is worth more than it is as it now stands. Or again, I will get you a good title to the land subject to the back taxes, provided your clients will enter into an agreement to reconvey to me free and clear of encumbrance at any time within three years that I may be able to raise and pay even $500. In either way you will accomplish, I take it, all you can accomplish by a suit and with less expense to your clients.

"Let me hear from you on this.

"Very truly,

"E. A. Barber."

Which letter was read in evidence.

The quit-claim deed given by Mary McQuacker to correct the mortgage given to her by mistake was also mailed to Barber, and was found attached to his deposition filed in this case.

That the coupons had been regularly paid as they fell due until the one maturing December 1st, 1896; that the note and remaining coupons were due and unpaid at the time of the trial.

Wm. J. Watts and wife resided at Golden City, Missouri, and he mysteriously disappeared from his home shortly prior to the election in 1896 and has not been heard from since. He was a brother-in-law of said E. A. Barber.

That the deed from W. W. Johnson and wife, dated

August 14th, 1889, was made to William J. Watts, and not to defendant, E. A. Barber; that it was filed for record April 8, 1901, and was acknowledged before George C. Barber, a notary, and a brother and partner in business with E. A. Barber; that the deed shows on its face that the name of the grantee had been erased, and the name of E. A. Barber inserted in lieu thereof, in his own handwriting, which was in 1901, just prior to the sale of the land to defendants.

The deed also shows upon its face that the consideration and one and a half line of the habendum clause had been erased; that defendant Best saw the erasures were made before the name of E. A. Barber was inserted into the deed, which was a few days prior to the time he and the Bradigums purchased the land. The only evidence tending to show when these alterations were made is the testimony of E. A. Barber, and he states they were made in 1901.

The Best and the Bradigums purchased the land together, and they discussed the defects in the title and especially the erased portions; that defendant Barber wanted them to accept the erased deed and have their names written in it as grantees in the place of the name of the grantee which had been scratched out or erased, which they refused to do.

The two mortgages were dated and recorded in 1902 and 1904—the last one, the one upon which this suit is based, was recorded December 29th, 1904.

Defendant Best testified that he saw the deed at La Plata, where it had been sent by E. A. Barber for inspection, and that he and the Bradigums refused to receive it and that at that time the amount of the consideration expressed in the deed was $1800, and that the name of the grantee had been scratched out.

That the attorneys for plaintiff have made all reasonable efforts to find and locate W. W. Johnson and Wm. J. Watts but failed to do so.

Defendant Barber procured his brother-in-law, Wm. J. Watts, and his wife to execute the mortgage to Janet McQuacker, who was a resident of Scotland, and secured the $500 from her for said Watts on said mortgage, which recites that Watts owned the land in fee; that he procured the quit-claim deed from Mary McQuacker, to whom the first mortgage had been made, to Wm. J. Watts and wife, and had it recorded, and in 1894 he had the mortgage in question executed and recorded, and all of these deeds were mailed to him at Humbolt, Kansas; all of which was prior to 1896, when his name was inserted in the scratched deed from W. W. Johnson and wife to Wm. J. Watts—that is, Watts' name was erased and his written in.

That the Bradigums had knowledge of the existence of the mortgage against the land before they and Best purchased it, and that plaintiff's attorneys were trying to collect it at that time, and that they relied upon the statements of E. A. Barber, as to the condition of the title.

Best testified that he knew of the existence of this mortgage before he had paid for the land, and he got that information from the Bradigums.

The defendants' evidence tended to prove: That on August 14, 1889, W. W. Johnson was the owner of the lands in question, and that on that day he executed and delivered to E. A. Barber a deed for said lands in proper form, duly acknowledged, with the name of the grantee and the consideration left blank; that the amount of the consideration agreed upon was paid by Barber to Johnson, and that Johnson at the same time executed and delivered to Barber written authority to insert the amount of the consideration and the name of the grantee in the blank spaces left in said deed, and in 1896 he inserted $800 as the consideration and his own name as the grantee in said deed; that the consideration paid by Barber for said deed was the assumption of a

mortgage debt of $400 against said land owed by John-
son to one Leitzbock and cancellation of a debt Johnson
owed said Barber; that in 1901, when he had an oppor-
tunity of selling the land to Best and the Bradigums,
he erased his name and the consideration clause in the
deed and sent it to the Bank of Kirksville, and tried to
close the deal with them by requesting them to take the
deed and insert their names and the consideration in
the deed. They refused to take the deed in that form,
fearing Barber's wife would be entitled to dower, as
they testified, in the land; that the deed was then re-
turned to Barber, who, thereupon, re-inserted in the
deed his own name as grantee and the amount of the
consideration as $1,000, and then sent it to the record-
er's office, at Macon, for record; that at the same time
he sent to the Bank of Kirksville a deed from himself
to the defendants Bradigums and Best, dated April 9th,
1903, and by that deed conveyed the land to them, and
that on the 20th of the same month he paid the Leitz-
bock mortgage.

At the time the defendants Bradigums and Best
bought the land, Barber furnished them an abstract of
title made by an abstractor at Macon, which showed a
good title in Barber, but did not show the mortgage
sued on; and the abstractor testified that the reason
why it did not appear in the abstract was because it did
not appear in the chain of title; that the deed from W.
W. Johnson to E. A. Barber was not recorded until
about the time he sold the land to Best and the Bradi-
gums.

The mortgage provided that if the interest was not
paid when due the principal note should become imme-
diately due and payable.

Defendants introduced in evidence the Statutes of
Limitation of Kansas, which are pleaded in the answer.

At the close of the evidence it was agreed and noted
of record that the cause was submitted to the court and

would be argued the next term of the court. At the next term of the court, the court, over the objection of the defendants, permitted plaintiff to introduce in evidence a certified copy of the order of his appointment as administrator of the estate of Janet McQuacker, deceased, to which action of the court defendants duly excepted.

The court found the issues for the plaintiff and rendered judgment in his favor, on each count as prayed for in the petition. The defendants filed their motion for a new trial, which was, by the court, overruled, to which action of the court defendants duly excepted, and have appealed the cause to this court.

I.   The first assignment of error made by appellants is, the action of the court in receiving in evidence a certified copy of the order of the probate court of Macon county, appointing respondent administrator of the estate of Janet McQuacker, after the close of the case. The evidence in the cause was heard at one term of the court and taken under advisement until the next term, at which time the certificate was offered and received in evidence. The order continuing the cause to the next term preserved the jurisdiction of the court over the entire case, and it possessed the same jurisdiction to act in the cause that it possessed at the previous term. There was no leakage or loss of power or jurisdiction of the court during the interim, nor during the passage of the cause from the one term to the other.

This court has repeatedly held that evidence may be introduced after a case is closed and the judgment will not be reversed on that account unless it appears to the satisfaction of this court that the trial court abused its discretion in that regard, and that injury resulted as a consequence thereof to the complaining party. [Fullerton v. Fordyce, 144 Mo. 526; Waterworks Co. v. Joplin, 177 Mo. 531.]

The proof of the appointment of Gross administra-

tor of the McQuacker estate was a formal matter and did not in any manner injure the defendants.

Independent of the rule just stated, we may add that under a general denial it was not necessary for plaintiff to prove his appointment as administrator. A general denial puts in issue only the merits of the case. If defendants desired to question the appointment of plaintiff, they should have done so by a special plea in the nature of a plea in abatement. This is the conclusion reached by VALLIANT, J., in a very able and carefully considered case, in which he reviews all the authorities upon that subject. [Baxter v. Railroad, 198 Mo. 1.]

It must, therefore, be held that there was no error in the action and ruling of the trial court in admitting in evidence the certified copy of the order appointing plaintiff the administrator of the estate of Janet McQuacker, deceased.

II. The next contention of the appellants is, that the court erred in admitting in evidence the mortgage sought to be foreclosed.

There is no question raised as to the genuineness of the signatures to the mortgage or that it was not actually recorded and properly indexed; but they do question the sufficiency of the acknowledgment, and contend that it was on that account improperly recorded, and that it imparted notice to no one.

Section 913, Revised Statutes 1899, provides that, "The certificate of acknowledgment shall state (1) the act of acknowledgment, (2) that the person making the same was personally known to the officer granting the certificate, to be the person whose name is subscribed to the instrument as a party thereto; and (3) or was proved to be such by at least two witnesses, whose names and places of residence shall be inserted in the certificate." The section provides further that the certificate of the officer taking the acknowledgment may be in the following form:

"On this —— day of ——, 18—, before me person-ally appeared A B (or A B and C D) to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he (or they) executed the same as his (or their) free act and deed.''

If we look at the certificate of acknowledgment attached to this mortgage, we find that it states (1) that Wm. J. Watts and Kate Watts (husband and wife) acknowledged the execution of the deed; (2) that they were personally known to him to be the same persons who executed the foregoing instrument; and (3) that while their names are stated in the certificate, their places of residence are not stated, without the caption of the certificate may be considered and taken to be their residence; but it will be seen by looking at the form of the certificate, prescribed by the statute, that it does not require the residence of the makers to be stated or given.

By construing the entire section together, we are clearly of the opinion that the first portion of the sec-tion is only directory, and not mandatory. In the form of certificate prescribed by the section, we find that it concludes with these words, ''and acknowledged that he (or they) executed the same as his (or their) free act and deed.'' The certificate of acknowledgment to the mortgage, in question, does not state that the grantors executed it as their ''free act and deed.'' The statute does not require this form to be used by the officer tak-ing the acknowledgment, but provides that it may be used. The first clause of the section provides, ''The certificate of acknowledgment shall state the *act of acknowledgment*,'' but does not require it to state that they executed the same as their ''free act and deed.'' The certificate of acknowledgment to this mortgage complies with the first clause of that section, and a sub-stantial compliance is all the law requires. [Alexander

v. Merry, 9 Mo. 527; Warder v. Henry, 117 Mo. 539; Wilson v. Quigley, 107 Mo. 98; Hughes v. McDivitt, 102 Mo. 77; Huse v. Ames, 104 Mo. 91.]

Appellants also insist that the mortgage should not have been admitted in evidence as imparting notice to them, because it did not form a link in the chain of title to the land described therein. This presents a more serious question than the one first disposed of. The record title was in W. W. Johnson, and he conveyed his title to Wm. J. Watts, but this deed of conveyance was never placed upon record. E. A. Barber erased the name of Watts therefrom and withheld it from record. While the title was in this condition the mortgage from Wm. J. Watts and wife to Janet McQuacker was executed and placed on record. Under the condition of the title, an investigation of the Johnson title would not reveal the Watts-McQuacker mortgage, because the record of that title did not disclose the deed of conveyance from Johnson to Watts, or in any other manner connect Watts with that title.

The law of this State is well settled that a purchaser is bound with constructive notice of all recorded instruments and the recitals therein lying within his chain of title; but a deed or instrument lying outside of the purchaser's chain of title imports no notice to him. [Tydings v. Pitcher, 82 Mo. 379; Crockett v. Maguire, 10 Mo. 34; Digman v. McCollum, 47 Mo. 372; Burke v. Beveridge, 15 Minn. 205; Patterson v. Booth, 103 Mo. 414; McDonald v. Quick, 139 Mo. 498; Railroad v. View, 156 Mo. 616.]

According to the rule announced in the foregoing cases, the action of the trial court in admitting the mortgage in evidence for the purpose of imparting notice to defendants of its existence was erroneous. But we are unable to see how that error did or could have injured appellants' rights in any manner whatever, because all the defendants had actual notice of

the existence of that mortgage before they purchased and paid for the land. One Bradley told the Bradigums about it, and Best testified that he had made the contract for the purchase of the land before he heard of the mortgage, but that he had not paid for the land when he received that notice, and Barber had actual knowledge of the mortgage, because he, himself, negotiated the loan and had the mortgage recorded.

In deciding a similar question SHERWOOD, J., used this language: ''And (2) the further fact, that it was established beyond question that the defendants were purchasers with full and actual notice of plaintiff's claim. Such notice countervails the effect of registry and dispenses with it.'' [Hoge v. Hubb, 94 Mo. 1. c. 498; Bartlett v. Glasscock, 4 Mo. 62; Vaughn v. Tracy, 22 Mo. 415; Sensenderfer v. Kemp, 83 Mo. 581; Vaughn v. Tracy, 25 Mo. 318; Speck v. Riggin, 40 Mo. 405; Foster v. Breshears, 55 Mo. 22; Harrington v. Fortner, 58 Mo. 473-4; Wilson v. Kimmel, 109 Mo. 260; Jackson v. Burgott, 10 Johns. 457.]

III. The defendants claim title to the land in controversy through and under the erased, mutilated and forged deed from Johnson to E. A. Barber. Under the facts as disclosed by the record in this case, it goes without saying that Barber fraudulently changed that deed, by erasing the name of the grantee, William J. Watts, and by inserting his own in lieu thereof, for the purpose of defrauding Janet McQuacker out of the $500 he had loaned for her. All the defendants saw the deed and inspected it or talked to those who had seen and inspected it regarding its condition, and refused to permit their names to be inserted into that deed as grantees in the place where the name of the grantee had been erased, but required E. A. Barber to insert his own name as the grantee and then took a deed from him to the same land. All of them had actual notice of the mutilated condition of the deed and suffi-

cient notice to have put a reasonably prudent person upon inquiry. If this information acquired by defendants had been properly followed up, it would have uncovered the rascality and forgery of Barber. They have no one to blame but themselves for their carelessness and credulity in this matter.

But so far as this branch of the case is concerned, that principle of law which holds that unrecorded deeds and instruments which are outside of the chain of title do not impart constructive notice to purchasers has no application to forged instruments. "It would be a dangerous doctrine indeed to hold that one by forging a deed from his neighbor to himself and putting it upon record could then, by conveying to a third party having no notice of the forgery, confer upon the latter a good title merely because the record showed the title in the forger. If such were the law, no man's title would be safe. The principles of justice and public policy alike forbid the adoption of such a rule." [Pry v. Pry, 109 Ill. 466, l. c. 476, and cases cited; 2 Jones, Law of Real Property and Conveyancing, sec. 1353.]

According to this rule none of the grantees claiming through E. A. Barber acquired any right, title or interest in or to said land, and it is wholly immaterial whether they had notice of the forgery or not.

IV. The last insistence of the appellants which is worthy of consideration is that the note sued on was barred by the statutes of limitation before this suit was instituted. Their contention is this, that the note and mortgage were executed and made payable in the State of Kansas, and that fact constituted the note a Kansas contract and subjected it to her laws of limitation, which was at that time five years. The note having been barred before the institution of this suit, the mortgage securing it must also be barred, so they contend.

The statute of Kansas which appellants plead is as follows:

" (4095). Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards.

"First: Within five years: An action upon any agreement, contract or promise in writing."

This statute was before the Kansas City Court of Appeals for consideration in the case of Morgan v. Railroad, 51 Mo. App. 523. It was there held that said statute only barred the remedy and did not go further and extinguish the cause of action.

We are of the opinion that the conclusion reached by that court is clearly the true meaning of that statute. That being true, then the debt evidenced by the note and mortgage in question was still a valid and subsisting claim at the time this suit was instituted. Except in those cases where the cause of action is extinguished by the statutes of limitation, the laws of the forum apply. [Carson v. Hunter, 46 Mo. 467; Lyman v. Campbell, 34 Mo. App. 213; Williams v. Railroad, 123 Mo. 573; King v. Lane, 7 Mo. 241; Stirling v. Winter's Ex., 80 Mo. 141.]

In the case at bar the note and first mortgage were dated and executed on December 1, 1892, and the second mortgage, correcting the first, was executed December 27, 1894, and this suit was filed sometime prior to September 6, 1902, the latter being the day on which the amended petition herein was filed, which was less than ten years after the execution of the note and the first mortgage and within eight years from the execution of the second.

In this State actions upon promissory notes and other written instruments for the payment of money, whether sealed or unsealed, are not barred by the statutes of limitation before the expiration of ten years from and after their execution, and suit may be brought

and maintained upon any such instruments at any time within that ten years. [R. S. 1899, secs. 4271, 4272.]

According to the provisions of these statutes, the cause of action was not barred at the time the suit was brought.

It is not out of place to here add that the undisputed evidence in this case shows that Wm. J. Watts and his wife were residents of Golden City, Barton county, Missouri, at the time of the execution of the note and mortgages in question, and there is not a scintilla of evidence tending to show that either of them ever resided in the State of Kansas. The record also shows that Janet McQuacker was at all times mentioned in the record a resident of Scotland, Great Britain. Under that state of facts the statutes of limitation of Kansas have no place in this case and are wholly inapplicable thereto. [Williams v. Railroad, 123 Mo. 573.]

There are some other minor points presented and discussed by counsel for both appellants and respondent, but their consideration would not lead to a conclusion different from the one herein announced.

The judgment of the circuit court was for the right party, and it is therefore affirmed.

All concur.